Hon. Grant E. Johnson Town Attorney, Paris
This is in response to your letter wherein you state that the Town of Paris has encountered a problem with reference to its zoning ordinance and a situation involving a nonconforming use. You explain that the Town's present zoning ordinance, adopted in July, 1976, limits the location of mobile homes within the Town to farms and mobile home parks. Prior to the enactment of this ordinance, a mobile home was established on a parcel of land and allowed to remain after July, 1976 as a nonconforming use. In the summer of 1978, this mobile home was removed from the premises and replaced a few days later with a newer, larger
mobile home. You note that there was never any application for a variance made to the Zoning Board and ask whether a variance is required or whether the nonconforming use status would automatically attach to the new mobile home.
You enclose a copy of the Town's zoning ordinance and amendments thereto. Article IX of said ordinance is entitled "Non-Conforming Uses" and states in pertinent parts:
"Section 28 — Non-conforming Use of Buildings
 "1. Additions. A non-conforming building shall not be added to or enlarged in any manner, unless such non-conforming building and the use thereof is made to conform to all the regulations of the district in which it is located.
 "2. Alterations and Repairs. No structural alterations shall be made to any non-conforming building unless such alterations are required by law; * * *.
* * *
 "7. Removal. If any building in which any non-conforming use is conducted is hereafter removed, the subsequent use of the land on which such building was located and the subsequent use of any building erected thereon shall conform with the regulations of the district."
Sections 130 (21) and 261 of the Town Law authorize the Town to regulate, by ordinance, mobile homes. Regulations of mobile homes similar to the Town of Paris zoning ordinance have been upheld as a valid power of the Town to provide for the health, safety and welfare of its residents (see Town of Pompey v Parker [1976, 4th Dept], 53 A.D.2d 125, affd 44 N.Y.2d 806; Stoddard v Town of Marilla [1977, 4th Dept],60 A.D.2d 771; Mobile Home Owners Protective Assn. Inc. v Town ofChatham [3d Dept, 1969], 33 A.D.2d 78). The courts have allowed strict regulation as long as it does not amount to a total prohibition within the Town (People v Clute, 47 Misc.2d 1005, affd 18 N.Y.2d 999 [1966]). Zoning ordinances may prevent changes from one nonconforming use to another (Matter of Off Shore Rest. Corp. v Linden [1972], 30 N.Y.2d 160) and may limit the enlargement or alteration of structures (Matter ofCrossroads Recreation v Broz [1958], 4 N.Y.2d 39). They may go as far as to eliminate nonconforming uses entirely by refusal to allow buildings to be rebuilt or by amortization over a reasonable period of time (Matter ofHarbison v City of Buffalo [1958], 4 N.Y.2d 553).
A property owner's rights to a nonconforming use are subject to conflicting considerations which must be resolved before the zoning ordinance can be interpreted. It must be kept in mind that all zoning ordinances are in derogation of a property owner's common law right to do with his property as he pleases. On the other hand, public policy strongly favors a planned development of communities and the ultimate abolition of all nonconforming uses. Judge Breitel addressed this conflict in Matter of Off Shore Rest. Corp. v Linden, supra, at p 164, in a decision which terminated a nonconforming use. He stated that:
 "It has been said in New York that a zoning ordinance must be `strictly construed' in favor of the property owner * * * by way of counterpoint, however, it has been said, with equal conviction, that the courts do not hesitate to give effect to restrictions on nonconforming uses * * * It is because these restrictions flow from a strong policy favoring the eventual elimination of nonconforming uses * * *" (Note: omissions indicate citations omitted.)
While the holdings of the Court of Appeals have recognized the landowner's right to continue a nonconforming use, the decisions have also made it clear that "we have never held that this right may continue virtually in perpetuity." (Matter of Harbison v City of Buffalo, supra at p 561.) This is especially true when dealing with nonconformingstructures rather than the nonconforming use of the land.
The apparent aim of the restrictive provisions of the Town of Paris zoning ordinance above cited (Art IX, section 28, subds 1, 2 and 7) is to hasten the day of obsolescence and to implement the zoning plan envisioned for the district. The entire article dealing with nonconforming uses (Art IX) evidences an intent of the Town to eventually eliminate the use of land which does not conform to the zoning regulations of the district.
Accordingly, the Town's zoning ordinance should not be given an interpretation which would permit an indefinite continuation of a nonconforming use. A mobile home, when removed from the highway and attached to the soil, becomes a building within the meaning of the zoning ordinance (Corning v Town of Ontario [S Ct, Wayne County, 1953],204 Misc. 38). The removal of the old mobile home and the placing of the new, larger mobile home on the land constituted an alteration, addition and enlargement of a nonconforming building which was prohibited by subdivisions 1, 2 and 7. (See Matter of 440 E. 102d St. Corp. v Murdock
[1941], 285 N.Y. 298, 309; 87 ALR 2d 4, 110.) Therefore, it is our opinion that the new, larger mobile home does not enjoy the status of a nonconforming use and a variance will have to be obtained.